Pauline DAVIS, Cynthia Williams, Cornelia Simmons, and Kim Rivera, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NEW YORK CITY HOUSING AUTHORITY, Defendant.

UNITED STATES of America, Plaintiff,

v.

NEW YORK CITY HOUSING AUTHORITY, Defendant.

Nos. 90 Civ. 628 (RWS), 92 Civ. 4873 (RWS).

United States District Court, S.D. New York.

Sept. 30, 1996.

Scott A. Rosenberg, Kalman Finkel, The Legal Aid Society, New York City, for Cynthia Williams, Pauline Davis, Blanca Iris Hernandez, Gina Campbell, Jeanette Vargas.

Shira A. Scheindlin, Herzfeld & Rubin, New York City, for New York City Housing Authority.

Gabriel W. Gorenstein, Otto G. Obermaier, Claude M. Milliman, Otto G. Obermaier, U.S. Attorney for the SDNY, New York City, for United States.

*MEMORANDUM AND ORDER*

SWEET, District Judge.

Plaintiffs in *Davis v. New York City Housing Authority* (the "*Davis* Plaintiffs") and in *United States v. New York City Housing Authority* (the "Government") (collectively, the "Plaintiffs") request that the time provided under the Consent Decree to file objections to changes in the Tenant Selection and Assignment Plan (the "TSAP") proposed by the New York City Housing Authority ("NY-CHA") be extended until sixty (60) days after the Department of Housing and Urban Development completes its review of the proposal or for 60 days from the return date of the motion.

For reasons elaborated below, the Plaintiffs' motion will be partially granted.

### The Parties

NYCHA is the largest public housing agency in the United States, operating more than 320 projects, comprising approximately 180,000 apartments which house nearly 500,-000 people. NYCHA operates these projects pursuant to an Annual Contributions Contract and other agreements with the Department of Housing and Urban Development ("HUD"), New York State and New York City. To be eligible for admission to public housing, families must be "low-income," defined by the United States Housing Act of 1937 as receiving household income less than 80 percent of the median income for the area. *See* 42 U.S.C. §§ 1437a(a)(1), 1437a(b)(2).

The Davis Plaintiffs are Latino and African–American individuals residing in or eligible for NYCHA housing.

### Prior Proceedings

On May 31, 1990, the Davis Plaintiffs filed a class action complaint against NYCHA, styled *Davis v. New York City Housing Authority,* 90 Civ. 628, alleging discrimination on the basis of race, color, and national origin in the selection and assignment of public housing tenants in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601 *et seq.* (the "Fair Housing Act"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and 42 U.S.C. §§ 1981,

1982, 1983. The Government later initiated a parallel action, *United States v. New York City Housing Authority,* 92 Civ. 4873, also alleging that NYCHA's policies and practices of selecting tenants for projects violated the Fair Housing Act.

The Government, the Davis Plaintiffs and NYCHA engaged in extensive settlement negotiations between October, 1991 and June, 1992. On July 1, 1992, a Consent Decree incorporating the TSAP was signed by the parties. The Consent Decree consolidated the Government and *Davis* Complaints, certified a plaintiff class of Black and Hispanic applicants and tenants in *Davis,* and provided certain relief with respect to the Plaintiffs.

Pursuant to Fed.R.Civ.P. 23(e), a fairness hearing was held on November 6, 1992. Additional written statements were received by the Court through November 11, 1992. A summary order approving the Consent Decree was entered on November 17, 1992, followed by a written opinion and order of the Court dated December 30, 1992.

By letter dated July 19, 1996, the Davis Plaintiffs requested an extention of time to object to modifications to the TSAP proposed by NYCHA on July 13, 1995. The request was deemed a motion, on which oral argument was heard on September 11, 1996. The Court received additional submissions through September 17, 1996, when the motion was deemed fully submitted.

### The Consent Decree

The Consent Decree contains the following provision for raising objections to proposed modifications to the Tenant Selection and Assignment Plan:

> If, during [the five year effective period of the Consent Decree], the Housing Authority finds it necessary to modify any provision of the TSAP, the Housing Authority will provide written notice to the parties at least sixty days in advance of the date that the proposed modification is to take effect. The notice shall include a full and complete description of the proposed modification, the reasons therefor, and the date upon which it is to take effect. If any party objects to the proposed modification on the ground that it may result in discrimination

on the basis of race, color, or natural origin, it may petition the Court to resolve the objection not earlier than 30 days from the date of the notice, and not later than ninety days after such notice, provided such period may be extended by agreement of the parties or, absent such agreement, by the Court for good cause shown.... Nothing in this paragraph shall be construed to relieve the Housing Authority of its obligation to obtain HUD approval of any modification to the TSAP pursuant to 24 C.F.R. § 1.4(b)(2)(ii).

Consent Decree at 13–14, ¶ 6(b).

### The Facts

It is undisputed that when the parties entered into the Consent Decree, they envisioned that NYCHA would first submit proposed TSAP amendments to HUD and then, if HUD approved the amendments, NYCHA would give Plaintiffs the notice required by paragraph 6(b) of the Consent Decree, triggering the ninety-day time limit for objections. In April, 1994, NYCHA followed this procedure in submitting a proposed TSAP amendment to HUD, planning to give formal notice to Plaintiffs if and when HUD approved it. HUD did not approve this requested amendment.

In early October 1994, attorneys for the Davis Plaintiffs received a public notice that NYCHA was holding hearings on another set of proposed changes to the TSAP. Plaintiffs wrote to the Housing Authority on October 21, 1994, stating that the public notice did not satisfy the notice requirement of paragraph 6(b) of the Consent Decree and expressing concern over the potential racial impact of the proposed changes and requesting data on their anticipated effects.

On November 18, 1994, NYCHA responded to Plaintiffs' letter, stating that Plaintiffs' requests were premature because the proposed modifications were "only tentative, and ... subject to internal review and adjustment." NYCHA represented that, after its internal review, it would submit any proposals to HUD. NYCHA's letter further stated: "If HUD approves the proposal and related TSAP amendments, the Housing Authority will provide written notice to you of the

proposed changes, and the date they are to take effect, in accordance with ¶ 6(b) of the *Davis* Consent Decree. At that time, you will have an opportunity to request such relevant statistics as we possess."

On July 13, 1995, NYCHA sent a letter and detailed description of the proposed changes to Plaintiffs. The letter stated: "In accordance with ¶ 6(b) of the Consent Decree, this is to notify you that the New York City Housing Authority plans to modify its Tenant Selection and Assignment Plan as described in the enclosures. The modifications will take effect on October 1, 1995, or as soon thereafter as HUD has approved them."

A year later, when HUD had not yet fully completed its review of NYCHA's proposal, Plaintiffs, by its letter of July 19, 1996, stated that they had contacted NYCHA about the timing of judicial review of the proposals and been informed that NYCHA had taken the position that Plaintiffs' time to object had expired on October 11, 1995. That letter, treated as a motion, sought an extension of time to object to the proposed changes to the TSAP.

### Discussion

The parties have differing contentions with respect to the beginning of the 90–day period for objections. The Consent Decree itself does not relate the objection period to any HUD action, delayed or otherwise. Although NYCHA's July 13, 1995 letter standing alone would trigger the running of the 90–day period for objections, the parties' prior practices, NYCHA's November 18, 1994 letter expressing the intention to delay notification and possible judicial consideration of these proposals, and the independent requirement of HUD review and approval constitute sufficient "good cause" under paragraph 6(b) of the Consent Decree to warrant an extension of time for Plaintiffs to file objections in this forum to NYCHA's proposed modifications to the TSAP. Since Plaintiffs have had ample time to consider the proposed modifications and because only two of the modifications appear to be at issue at this time, the extension will be limited to 30 days from the filing of this order.

In the future, NYCHA is free to choose when it will notify Plaintiffs of proposed modifications of the TSAP (provided, of course, that the notification is given 60 days prior to the effective date of any changes), and Plaintiffs must, within the time prescribed in the Consent Decree, file objections, secure NYCHA's agreement to an extension, or apply to this Court for appropriate relief, whether or not HUD has acted. It will then be up to the parties or the Court to coordinate the administrative and judicial proceedings.

### Conclusion

For the reasons stated above, the Plaintiffs are hereby granted thirty (30) days from the date this order is filed to make objections to the proposed changes to the TSAP.

It is so ordered.